## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-25257-Civ-GAYLES/TORRES

SOLAR ECLIPSE INVESTMENT
FUND VII, LLC *et al.*,

      Plaintiffs,

v.

T-MOBILE USA, INC.,
INTERNATIONAL SPEEDWAY CORPORATION,
MARSHALL & STEVENS, INC.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFFS' MOTION TO REMAND

This matter is before the Court on Solar Eclipse Investment Fund VII LLC's *et al.*, ("Plaintiffs") motion to remand this action back to Florida state court. [D.E. 7]. T-Mobile USA, Inc. ("T-Mobile") and International Speedway Corporation ("ISC") (collectively, "Defendants") filed separate responses in opposition on January 28, 2021 [D.E. 20-21] to which Plaintiffs filed their replies on February 4, 2021. [D.E. 24-25]. Therefore, Plaintiffs' motion is now ripe for disposition. After careful consideration of the motion, responses, replies, relevant authorities, and for the reasons discussed below, Plaintiff's motion to remand should be **GRANTED** as to ISC and **DENIED** as to T-Mobile.[1]

---

[1]     On January 6, 2021, the Honorable Darrin P. Gayles referred all pretrial matters to the undersigned Magistrate Judge for disposition.  [D.E. 6].

## I.  BACKGROUND

Plaintiffs are a group of investment funds that poured hundreds of millions of dollars into an enterprise that purported to manufacture and deploy mobile solar generators ("MSGs").  Jeff and Paulette Carpoff (the "Carpoffs") and their company – DC Solar Distribution Inc. and its related entities ("DC Solar") – were the central figures that orchestrated a $2.5 billion dollar Ponzi scheme to provide a temporary source of electrical power to customers.  DC Solar offered investment opportunities to third party investors to purchase and lease the MSGs in return for valuable tax and financial benefits.

Plaintiffs paid approximately 30% of the sale price for each MSG between 2011 and 2018 (worth approximately $45,000 each) as a down payment and issued a promissory note to DC Solar for the remaining amount.  Plaintiffs leased the MSGs back to DC Solar and then DC Solar leased the MSGs to third parties, such as T-Mobile and ISC.  T-Mobile used the MSGs as emergency power for cellular towers and ISC used them to power light stands at its racetracks.  Plaintiffs were attracted to these investments, in part, because DC Solar had long-term lease agreements with these Defendants.  This allowed for an accurate valuation of the MSGs, provided Plaintiffs with revenue to pay off the promissory notes, and showed that DC Solar had reputable business partners.

However, many of the MSGs that DC Solar purported to manufacture never existed.  The Carpoffs and several other co-conspirators used DC Solar as a vehicle to defraud Plaintiffs and other investors.  And to date, some co-conspirators have

been charged with, and pled guilty to, federal charges.  DC Solar is now part of bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Nevada.

T-Mobile is a publicly traded wireless network operator incorporated in Delaware with a principal place of business in Washington State.  A T-Mobile employee, Alan Hansen ("Mr. Hansen"), began T-Mobile's relationship with the Carpoffs in 2012 when the company looked to save money on backup generators during power outages.  T-Mobile started to rent MSGs from DC Solar in 2014 pursuant to short-term as-needed agreements.  In September 2015, DC Solar presented T-Mobile with a lease contract that required the latter to lease 1,000 MSGs at a rent of $1,100 per month for ten years (the "T-Mobile Lease").  This contract, over its lifespan, required T-Mobile to pay more than $130 million over ten years.  Mr. Hansen signed the lease on behalf of T-Mobile.  Plaintiffs allege, that prior to the signing, T-Mobile knew it would not honor the agreement and would instead continue to only rent MSGs on a short-term as-needed basis.  Plaintiffs claim that T-Mobile and DC Solar used the lease to induce them to invest in MSGs.

ISC, on the other hand, is a Florida corporation that operates as a motorsports promoter.  The company owns and operates thirteen motorsports facilities, including the Daytona International Speedway.  In 2016 and 2017, ISC entered into three separate ten-year agreements with DC Solar to sublease MSGs, which required ISC to pay DC Solar $150 million dollars over ten years (the "ISC Subleases").  Each ISC Sublease named one of the Plaintiffs as a third-party

beneficiary to the agreement and contained a provision that there were no other agreements between ISC and DC Solar.  However, unbeknownst to Plaintiffs, ISC and DC Solar entered into addendums for each ISC Sublease that allowed ISC to terminate the agreements in their entirety at its convenience.  In addition, the addendums each contained a promise from DC Solar that it would enter into sponsorship agreements with several affiliates of ISC.  As a result, DC Solar and ISC affiliates entered into five sponsorship agreements that required DC Solar to pay the ISC affiliates $7.5 million dollars per year.  Plaintiffs claim that these sponsorship agreements were concealed.

On December 17, 2020, Plaintiffs filed a state court complaint [D.E. 1-2] against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County Florida with three causes of action: (1) fraudulent misrepresentation/concealment, (2) aiding and abetting fraud, and (3) negligent misrepresentation.  T-Mobile filed a notice of removal on December 27, 2020, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1447.  [D.E. 1].  On January 7, 2021, Plaintiffs filed a motion to remand this action back to Florida state court.  [D.E. 7]. One week later on January 14, 2021, ISC consented to T-Mobile's removal and asserted an additional basis for the Court to exercise federal jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 1452(a).  [D.E. 11].  With all responses and replies having been filed, the motion to remand is now ripe for disposition.

## II. APPLICABLE PRINCIPLES AND LAW

### A.  Removal Standard

Federal courts are courts of limited jurisdiction, meaning they only have the power to provide a forum for some, not all, disputes. *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000) ("Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases.").  "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (citations and internal quotations omitted).  "A federal court not only has the power but also the obligation at any time to inquire into  jurisdiction  whenever  the  possibility  that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Beavers v. A.O. Smith Elec. Prods. Co.*, 265 F. App'x 772, 777 (11th Cir. 2008) (citations omitted).

"The plaintiff is the master of his complaint and is free to choose federal or state jurisdiction." *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 1725232, at *1 (M.D. Fla. June 14, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)).  A defendant may remove a case from a state to federal court pursuant to 28

U.S.C. § 1441.  If a defendant decides to do so, the defendant bears the burden of putting forth sufficient facts supporting the existence of federal jurisdiction.  *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998).  A federal court must determine whether it has subject matter jurisdiction at the time a removal notice is filed.  *See Poore v. American-Amicable Life Ins. Co., Inc.,* 218 F.3d 1287, 1290-1291 (11th Cir. 2000).

If a case is removed on the basis of section 1332(a), there must be (1) complete diversity between the parties and (2) there must be an amount in controversy that exceeds $75,000.  *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"); *see also Matrix Z, LLC v. Landplan Design, Inc.*, 493 F. Supp. 2d 1242, 1245 (S.D. Fla. 2007).  In meeting the burden of establishing the amount in controversy, the removing defendant must establish by "'[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'"  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007) (quoting *Black's Law Dictionary* 1220 (8th ed. 2004)).  If the removing defendant fails to do so, the court must remand the case back to state court because removal statutes are narrowly construed with uncertainties resolved in favor of remand.  *See Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1329 (11th Cir. 1998); *see*

*also Morock*, 2007 WL 1725232, at *1 ("A federal district court must remand to state court any case [that] lacks necessary jurisdiction or that was removed improperly.") (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)).

### B.    *Fraudulent Joinder Standard*

An exception to the complete diversity rule—that a federal court must remand a case to state court if there is not complete diversity between the parties—arises when a plaintiff fraudulently joins a defendant solely to defeat federal jurisdiction.  "The burden of the removing party is a 'heavy one.'"  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).   To determine whether a case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.  The plaintiff's pleadings as they exist at the time of removal provide the canvas on which these determinations are made.  *Id.* (citing *Miller Brewing Co.*, 663 F.2d at 548-49).  However, the pleadings may be "supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b), the jurisdictional inquiry "must not subsume substantive determination." *Miller Brewing Co.*, 663 F.2d at 550.  In other words, a plaintiff need not show that he could survive a motion for summary judgment because "the

plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Crowe*, 113 F.3d at 1541-42 (quoting *Miller Brewing Co.*, 663 F.2d at 550).  The procedures are therefore similar but the substantive standards are different because "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Id.* at 1538.

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993); *see also Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.") (citations omitted).  In short, when considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.

These principles make sense given that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to

prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).   The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be re-litigated.

### III.  ANALYSIS

Plaintiffs seek to remand this case back to Florida state court because, despite the arguments presented in favor of removal, complete diversity is lacking among the parties.  Plaintiffs allege that they and Marshall & Stevens, Inc. ("M&S") are both citizens of California and that the complaint ties each of the defendants to the same fraudulent transaction or scheme.[2]  [D.E. 1 at ¶ 9 ("M&S worked together with ISC to promote the ISC agreement to third parties as a legitimate long-term lease."); *id.* at ¶ 13 ("T-Mobile, ISC and M&S also participated in the fraud by falsely representing that the MSGs were being leased in accordance with the subleases.  The MSGs were not being leased in accordance with the subleases."); *id.* at ¶ 24 ("Defendants participated in or were negligent in advancing the same fraud, i.e., the false appearance of long-term leases to induce Plaintiffs to invest in MSGs, using the same fraudulent scheme, interacting with the same fraudsters,

---

[2]    T-Mobile is a Delaware corporation and ISC is a Florida corporation.

interacting with the same Funds, causing the same injury, and involving the same witnesses of the fraud.")].

T-Mobile opposes remand because the evidence is clear that Plaintiffs added M&S as an unrelated defendant solely to defeat federal jurisdiction. T-Mobile accuses Plaintiffs of using the same unsuccessful tactics in a related action, where the Court recommended, in part, the denial of a motion to remand because of fraudulent joinder. *See Luria v. T-Mobile USA, Inc. et al.*, No. 20-24012-Civ-GAYLES/TORRES (S.D. Fla. Jan. 13, 2021) [D.E. No. 36 at 16-18] (recommending that plaintiffs' motion to remand be denied as to T-Mobile because of fraudulent joinder but granted as to ISC). T-Mobile says that the same reasoning applies here because there is no nexus between the claims presented against T-Mobile and M&S. T-Mobile claims that the two defendants are only alleged to have been associated with each other through separate contracts with DC Solar in *different* states during *different* time periods. Even worse, T-Mobile argues that Plaintiffs have not even alleged that T-Mobile and M&S had any dealings or communications with each other. If anything, T-Mobile says that the complaint connects M&S to ISC. [D.E. 20 at 4 ("Plaintiffs allege that M&S is only connected to ISC, and Judge Torres has already found that there is no nexus between T-Mobile and ISC.")]. For these reasons and others, T-Mobile concludes that the Court should reach the same result here and deny Plaintiffs' motion to remand.

ISC's response is that M&S has no connection to any of the other defendants. ISC says that – while the complaint claims that M&S participated in a Ponzi

scheme, concealed the nature of ISC's contracts with DC Solar, and promoted ISC's leases to third parties – all of the allegations are conclusory and fail to rely on any supporting facts. ISC also argues that none of the allegations include any facts on M&S's conduct, including the who, what when, where, and why. In sum, ISC says that the motion to remand should be denied because Plaintiffs have fraudulently joined M&S under the first and third types of fraudulent joinder and that, even putting that aside, the claims against ISC are subject to federal bankruptcy jurisdiction.

### A.     *General Principles of Fraudulent Joinder*

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity[.]" *Stone v. Zimmer, Inc.*, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009) (quotation marks omitted). "The Eleventh Circuit has identified three situations in which joinder may be deemed fraudulent: (1) when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) where a plaintiff has pled fraudulent jurisdictional facts to bring the resident defendant into state court; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability, and the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Parkview Point Condo. Assocation, Inc. v. Arch Specialty Ins. Co.*, 2020 WL 6134270, at *2 (S.D. Fla. Mar. 26, 2020) (citing *Triggs*, 154 F.3d at 1287).

Under the first type of fraudulent joinder, "[i]f there is a possibility that a

state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (reiterating standard from *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001)).  "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Tillman*, 253 F.3d at 1305.  The potential for legal liability "must be reasonable, not merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325 (11th Cir. 2005) (*citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002)).  "[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Pacheco de Perez*, 139 F.3d at 1380-81 (quoting *Crowe*, 113 F.3d at 1538). Ultimately, a removing defendant must show by clear and convincing evidence that the plaintiff cannot establish a cause of action against a resident defendant.  *See Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The third type of fraudulent joinder – sometimes referred to as "fraudulent misjoinder" or "procedural misjoinder" – applies "where a diverse defendant is joined with a nondiverse defendant as to who there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.  If a Court determines that a defendant is fraudulently joined, it must "ignore

the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson*, 454 F.3d at 1281.  Because Defendants posit that the first and third types of fraudulent joinder apply, we consider each in turn.[3]

### B.    A "Possible" Cause of Action Against M&S

ISC argues that M&S has been fraudulently joined because there is no possible cause of action against that defendant.  For this argument to succeed, ISC must show, by clear and convincing evidence, that Plaintiffs have no possibility of establishing any of the three causes of action against M&S, including fraudulent misrepresentation/concealment, aiding and abetting fraud, and negligent misrepresentation.  ISC says that the complaint fails to include the required allegations to sustain any of these causes of action and, for that reason, there is no possibility that any of these claims can survive under Florida law.

Turning first to Plaintiff's aiding and abetting fraud claim against M&S, "no Florida court has explicitly recognized [this] cause of action," but "Florida courts have assumed that the cause of action exists." *Chang v. JPMorgan Chase Bank,*

---

[3]    We omit a more detailed explanation of the second type of fraudulent joinder because all parties agree that it does not apply.  The second form of fraudulent joinder is "exceedingly rare," where some circuits have not even had a court find, much less a defendant argue, fraudulent joinder based on outright fraud in pleading jurisdictional facts.  *Gross v. FCA US LLC*, 2017 WL 6065234, at *5 (N.D. Ill. Dec. 7, 2017) (citing *Coffman v. Dole Fresh Fruit Co.*, 927 F. Supp. 2d 427, 434 (E.D. Tex. 2013) ("Few courts have addressed fraudulent joinder based on actual fraud in the pleading of jurisdictional facts."); *Randle v. SmithKline Beecham Corp.*, 338 F. Supp. 2d 704, 707 n.4 (S.D. Miss. 2004) ("[T]here is a dearth of case law . . . and hence, little guidance on what must be present before a finding of actual fraud in pleading jurisdictional facts[.]"); *Lyons v. Lutheran Hosp. of Ind.*, 2004 WL 2272203, at *2 (S.D. Ind. Sept. 15, 2004) ("The latter form of fraudulent joinder is rare and is not alleged to have occurred here.")).

*N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371–72 (Fla. 5th DCA 2005) (explaining that aiding and abetting fraud "may well be a valid cause of action in Florida")).  Aiding and abetting fraud has three elements: (1) the existence of "an underlying fraud"; (2) that "[t]he defendant had knowledge of the fraud"; and (3) that "[t]he defendant provided substantial assistance to advance the commission of the fraud." *ZP No. 54 Ltd. P'ship*, 917 So. 2d at 372.

ISC says that the third element for aiding and abetting fraud requires either substantial assistance, or mere inaction so long as a defendant owes a fiduciary relationship to a plaintiff.  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006) ("Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.") (citations and internal quotation marks omitted).  ISC argues that the complaint falls short because – while Plaintiffs seek to hold M&S liable for its inaction to stop the Ponzi scheme – M&S had no fiduciary duty to Plaintiffs in the first place.

ISC also posits that, to the extent Plaintiffs complain that M&S substantially assisted in the fraud, those allegations are insufficient because they are hopelessly conclusory.  ISC states that the only affirmative acts attributable to M&S occurred on conference calls with a non-party in support of a loan made to DC Solar:

14

87.  ISC and M&S also assisted the Fraudsters in obtaining a $46 million loan from SunTrust backed by the supposed ISC Sublease Agreements on or around November 3, 2017.  On August 21, 2017, Kelleher and Hacker had a telephone conference call with Jeff Carpoff to discuss how to induce SunTrust to make a loan on the ISC Sublease Agreement.

88.  Keller and M&S concealed material information from Suntrust in connection with the $46 million loan, including that the ISC Sublease Agreement was a sham.

89.  ISC and M&S continued to mislead SunTrust about the nature of the ISC Sublease Agreement up and through the discovery of the fraud in December 2018.  Kelleher and Hacker participated in multiple conference calls with third parties in October 2018 in which Kelleher and Hacker continued to conceal the sham nature of the ISC Sublease Agreement.

[D.E. 1-2 at ¶¶ 87-89].  ISC says that this cannot sustain an aiding and abetting fraud claim because these allegations "had nothing to do with and could not have influenced Plaintiffs' prior transactions with DC Solar."  [D.E. 21 at 16].  Because Plaintiffs fail to explain how these allegations were undertaken to benefit M&S, ISC concludes that there can be no possible claim for aiding and abetting fraud.

ISC's arguments are unpersuasive, in large part, because it takes issue with the veracity of the allegations as opposed to whether the elements are presented in the complaint itself.  ISC complains, for example, that the allegations are conclusory or otherwise out of order with the timeline of certain events.  But, "disregarding allegations as conclusory and requiring them to contain a certain amount of factual matter sounds a lot like the 12(b)(6) standard, not the fraudulent joinder standard."  *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011).  In fact, "[n]othing in our precedents concerning fraudulent joinder requires

anything more than conclusory allegations or a certain level of factual specificity." *Id*. The only requirement is to include sufficient allegations to establish a *possibility* that a state court – in this case Florida – would find that the complaint states a cause of action. And the complaint here meets that standard because Florida Rule of Civil Procedure 1.110(b) only requires only "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief[.]"

Plaintiffs have also met the other elements for an aiding and abetting fraud cause of action because they allege the existence of an underlying fraud, [D.E. 1-2 at ¶ 67: "ISC knew that the ISC Sublease Agreement provided to the Funds was false and misleading without the Addendum, and thus was an intentional misrepresentation to and concealment from the Funds that caused harm")], they claim that M&S had knowledge of the fraud, *id*. at ¶ 8 ("M&S was also aware of the sham nature of the contracts between ISC and DC Solar Distribution and concealed the true nature of the contracts from Plaintiffs"), and they accuse M&S of providing substantial assistance in hiding the ISC Sublease Agreement. Nothing more is required. While ISC says that the allegations are conclusory, so too are ISC's arguments that no possible cause of action exists against M&S. Indeed, ISC merely declares that the complaint is defective without any substantive explanation in support of that position. And even worse, ISC never explains how its arguments go hand in hand with the pleading requirements under Florida law.

Instead, it appears that ISC asks that the Court to impose the federal pleading requirements that are used in the disposition of a motion to dismiss. But,

the fraudulent joinder standard differs from, and is less stringent than the *Twombly* / *Iqbal* "plausibility" test that governs motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kimball v. Better Business Bureau of West Florida*, 613 F. App'x 821, 823 (11th Cir. June 2, 2015) ("Notably, the standard for assessing fraudulent joinder differs from the one used for Rule 12(b)(6) motions to dismiss[.]"). Whereas the *Twombly* test "asks for more than a sheer possibility that a defendant has acted unlawfully, . . . all that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (citations omitted). And unlike the plausibility test that governs Rule 12(b)(6) motions in federal court, the Eleventh Circuit uses a possibility test for fraudulent joinder that incorporates the pleading standards applicable in state court. So, given that ISC has not even explained how the complaint fails to allege a cause of action under Florida's pleading requirements, this is just one more reason why ISC's arguments lack merit. *See Stillwell*, 663 F.3d at 1334 ("To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.").

We could, of course, look to whether Plaintiffs have properly alleged a cause of action for fraudulent and negligent misrepresentation, but there is no need to do so when there exists the possibility that M&S can be held liable for aiding and abetting fraud. ISC might disagree because the allegations are conclusory,

disjointed, or otherwise out of order, yet "[t]he standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient[.]" *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 846 (11th Cir. 2013).   The Eleventh Circuit has also explicitly warned district courts against parsing the sufficiency of the pleadings under state law pleading requirements in the context of fraudulent joinder.  *See Hendersen*, 454 F.3d at 1283-84 (stating that "the precise contours of the pleading requirements is not dispositive" and that the court's task is not to gauge the sufficiency of the pleadings, but to decide whether the defendants have proven that plaintiff has failed to assert even a colorable claim under state law).   Thus, the first form of fraudulent joinder is inapplicable and there is no need to go any further in considering the remaining causes of action.[4]

### C.   *Procedural Misjoinder*

The next question is whether Plaintiffs have fraudulently joined any defendants and whether the alleged claims arise out of the same transaction, occurrence, or series of transactions or occurrences.  This falls under the third type of fraudulent joinder, which, as we stated earlier, refers to "procedural misjoinder" or "fraudulent misjoinder."

A plaintiff's joinder is proper, and not procedural misjoinder, when it satisfies the permissive joinder requirements of Rule 20.  Rule 20 states that "[p]ersons . . . may be joined in one action as defendants" as long as (1) the claims against them "aris[e] out of the same transaction, occurrence, or series of transactions or

---

[4]   Only ISC presented an argument in favor of the first type of fraudulent joinder.

occurrences" as the underlying action, and (2) "[a] question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20(a).   Courts in the Eleventh Circuit determine if there is a "logical relationship" in determining whether claims arise from the same transaction or occurrence, or series of transactions or occurrences.   *See, e.g., Smith v. Trans–Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010).   "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Smith v. Trans– Siberian Orchestra,* 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). Stated differently, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health,* 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.,* 598 F.2d 1357, 1361 (5th Cir. 1979)).   "[O]nly claims that do not arise from common operative facts are not logically related." *Montgomery Ward Dev. Corp. v. Juster,* 932 F.2d 1378, 1381 n. 1 (11th Cir. 1991).

If a plaintiff improperly joins defendants contrary to Rule 20, Rule 21 applies. Rule 21 allows a court to sever any claim against a party procedurally misjoined, which is "the proper remedy." *Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (citing Fed. R. Civ. P. 21); *see also M.W.*, 2015 WL 1311029, at * 6 (finding diverse defendants procedurally misjoined and thus severing and remanding claims against non-diverse defendants back to state court).   To determine whether there is procedural misjoinder under Rule 20, we must determine whether the claims

against T-Mobile and ISC concern the same set of facts as the claims against M&S. If the answer is no, then Plaintiff has procedurally misjoined M&S with respect to one or both Defendants, which may then counsel in favor of severance and retaining jurisdiction.  To make this determination, we examine the operative pleading (i.e. the state court complaint) at the time of removal.  *See Crowe,* 113 F.3d at 1538.

Plaintiffs say that all Defendants are part of the same transaction or occurrence.  Plaintiffs argue that, if any Defendants were treated differently, it would require unnecessary costs to bring the same claims in multiple lawsuits. Plaintiffs also suggest that this case presents a classic example of a case involving the same occurrences because the allegations include a widespread fraud to injure the same persons or class of persons (i.e. Plaintiffs) using the same instrumentality (i.e. DC Solar) and the same methods of deception (i.e. signing long-term leases to create an appearance of guaranteed income).  Plaintiffs also contend that this resulted in the same harm (i.e. the loss of hundreds of millions of dollars) and the same bad actors.  So, even though the fraudulent actions of each defendant might have taken place at different times and in somewhat different ways, Plaintiffs reason that courts have repeatedly rejected this argument.  *See, e.g.*, *Black v. Cable News Network, Inc.*, 2016 WL 4443622, at *3 (S.D. Fla. July 19, 2016) ("The CNN Defendants argue that Robinson has been misjoined because the defamation claims against her are based on different statements than the defamation claims against them, and the statements were made on different occasions to different persons. The CNN Defendants read the 'transaction or occurrence' requirement in Rule 20

too narrowly.") (internal citation omitted).  And even if the Court considers these Defendants to be misjoined, Plaintiffs conclude that it is not so egregious to warrant a severance of the claims or parties.

For many of the reasons articulated in the undersigned's Report and Recommendation in *Luria v. T-Mobile USA, Inc. et al.*, No. 20-24012-Civ-GAYLES/TORRES (S.D. Fla. Jan. 13, 2021), an objective review of the complaint shows that the claims presented against T-Mobile do not arise out of the same transaction, occurrence, or series of transactions or occurrences as any of the other defendants.  Take, for example, the allegations that Mr. Hansen signed the T-Mobile Lease in September 2015.  [D.E. 1-2 at ¶ 46].  This is dramatically different than the allegations presented against ISC because those agreements were purportedly signed in December 2016 and September 2017, *id*. at ¶ 61, and other contracts stretching into August 2018, *id*. at ¶ 65.  The timing of the alleged frauds is not remotely the same.

Plaintiffs then claim that the connection between T-Mobile and ISC is their common affiliation with DC Solar.  Yet, according to the complaint, T-Mobile and ISC began their relationship with DC Solar nearly a half-decade apart.  *Compare id*. at ¶ 43 (alleging  that T-Mobile's relationship with DC Solar began in May 2012) *with id*. at ¶ 57 (alleging that ISC began working with DC Solar in February 2016).  Plaintiffs also never allege or point to any specific communications or concerted activities between T-Mobile and M&S, where one could say that joinder were proper.  *Compare Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D.

Fla. Feb. 25, 2013) ("The absence of concerted activity [is] fatal to Plaintiffs' attempt at joinder") (citing *Spaeth v. Michigan State University College of Law,* 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (stating that plaintiffs "cannot join defendants who simply engaged in similar types of behavior, but who are otherwise unrelated; some allegation of concerted action between defendants is required"); *Malibu Media, LLC v. Does 1–11,* 286 F.R.D. 113, 115 (D.D.C. 2012) (same); *see also Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.,* 497 F.2d 1151, 1154 (2d Cir. 1974) (affirming dismissal where misjoinder of claims brought by associations of insurance agents against 164 insurance companies "was such a gross abuse of procedure that dismissal . . . for failure to comply with the federal rules is warranted")), *with Black v. Cable News Network, Inc.*, 2016 WL 4443622, at *3 (S.D. Fla. July 19, 2016) (joinder proper because the "the statements made by Robinson are closely connected to the statements made by CNN in subject matter, in time, and in source.") and *Squire v. GEICO Gen. Ins. Co.*, 2012 WL 12864938, at *3 (S.D. Fla. Nov. 2, 2012) (denying remand and finding joinder proper because the defendants, at least in part, jointly refused multiple settlement opportunities.").

In an attempt to cure these shortfalls, Plaintiffs return to many of the same cases that the undersigned previously rejected, including a bankruptcy court's decision in *In re DBSI, Inc.*, 476 B.R. 413 (Bankr. D. Del. 2012). Plaintiffs suggest that this case is instructive because a trustee alleged a widespread Ponzi scheme and the court found the allegations to be sufficient under Rule 20. That case is distinguishable for many reasons, mostly because it involved a complex bankruptcy

proceeding, numerous affiliated parties, hundreds of similar bank transactions occurring around the same time, and, most significantly, the architect of the Ponzi scheme was a party. *Id.* Our case, on the other hand, is different because the architects of the Ponzi scheme are *not* the parties to this action. Rather, Plaintiffs are trying to tie together unaffiliated "aiders and abetters" based on different transactions at different times in completely different ways. That cannot stand because it runs afoul of the text and purpose of Rule 20.

To the extent Plaintiffs are concerned about litigating against different defendants in different forums, that worry is misplaced because there is nothing to be gained from litigating against a defendant when the allegations are entirely distinct and arise from separate transactions. Indeed, if Plaintiffs were allowed to pursue their claims against T-Mobile, it would actually hinder judicial economy rather than promote it because this defendant has nothing in common with the other defendants. And even if Plaintiffs were forced to litigate against T-Mobile in this forum and the other defendants in state court, Plaintiffs would still have the opportunity to pursue a consolidated action, if appropriate, in state court with any claims logically related and arising out of the same set of operative facts. Therefore, given that Plaintiffs have failed to allege any facts[5] directly connecting their claims against T-Mobile with any of the other defendants, the attempted joinder is unreasonable and thus egregious enough to constitute procedural misjoinder under

---

[5]     Although Plaintiffs say that Defendants are jointly, severally or alternatively liable, their allegations do not support such a finding as to T-Mobile because, as previously discussed, the claims arise out of an entirely different set of operative facts than those of the other defendants.

Rule 20. *See Barber*, 289 F.R.D. at 369 ("When, as here, judicial economy is not served by joining claims, severance is appropriate.") (citing *U.S. v. Timmons,* 672 F.2d 1373, 1380 (11th Cir. 1982)).

The ensuing question is whether the same reasoning applies to ISC. Unlike T-Mobile, Plaintiffs allege – at several points in their complaint – that M&S and ISC worked together to perpetuate a Ponzi scheme:

> M&S worked together with ISC to promote the ISC agreement to third parties as a legitimate long-term lease.
> . . .
> ISC and M&S also assisted the Fraudsters in obtaining a $46 million loan from SunTrust backed by the supposed ISC Sublease Agreement on or around November 3, 2017. On August 21, 2017, Kelleher and Hacker had a telephone conference with Jeff Carpoff to discuss how to induce SunTrust to make a loan based on the ISC Sublease Agreement.
> . . .
> Jeff Carpoff provided Hacker/M&S with a copy of the secret ISC Sublease Agreement Addenda and M&S concealed it from Plaintiffs.
> . . .
> Without M&S's substantial assistance in hiding the true nature of the ISC Sublease Agreement, the fraud on the Funds would not have occurred and the Funds would not have lost hundreds of millions of dollars.

[D.E. 1-2 at ¶¶ 9, 87, 99, 102].

ISC says that, despite these allegations, the complaint makes clear that M&S's relationship was with DC Solar and that any contacts between ISC and M&C were borne of that relationship. ISC also argues that the allegations are conclusory, never supported with any specific factual allegations, and that the complaint is purposefully vague in failing to clarify the roles of certain third-parties or other actors that acted in concert with M&S. ISC further claims that the alleged

communications concern contracts to which Plaintiffs had no relationship and were neither parties nor beneficiaries.  Any concerned activity was, in ISC's view, between M&S and DC Solar.

ISC's arguments are unavailing, for many of the reasons stated in examining the first type of fraudulent joinder, because the complaint alleges that M&S and ISC engaged in a coordinated effort to defraud third-parties.  ISC spends several pages on how Plaintiffs' allegations are either untrue, lacking in specificity, conclusory, or otherwise misplaced.  [D.E. 21 at 9 ("These broad, conclusory allegations are never supported by specific allegations of fact and therefore are insufficient."); *id*. at 10 ("[T]hese alleged communications were not made to Plaintiffs, but to a non-party bank, and have nothing to do with Plaintiffs' allegations concerning misstatements or concealments to Plaintiffs.")].  But, none of these arguments are effective in showing fraudulent joinder.  All of ISC's arguments are instead more appropriately raised on a motion to dismiss.  ISC suggests that the fraudulent joinder standard should be different yet "do not cite any binding Eleventh Circuit authority for putting a Rule 12(b)(6) gloss on a fraudulent joinder inquiry." *MYD Marine Distrib., Inc. v. Int'l Paint Ltd.*, 2009 WL 10667832, at *4 (S.D. Fla. Mar. 10, 2009).

ISC also reads into the complaint additional allegations while omitting others to untie the knot that connects ISC with M&S.  But, ISC has no authority that allows it to engage in this type of legal jujitsu, where it flat out denies certain allegations and then adds its own inferences to create separation between the two

entities when none exists.  ISC says, for instance, that all of the alleged acts took place during different time periods.  The problem with that contention is that it squarely contradicts the allegations in the complaint.  Plaintiffs allege that ISC and M&S collectively induced third parties (i.e. SunTrust) and concealed certain information to further a fraud with respect to the ISC Subleases between 2017 and 2018.  [D.E. 1-2 at ¶¶ 87-89].  ISC tries to sidestep this allegation with an argument that "[t]his had nothing to do with and could not have influenced Plaintiffs' prior transactions with DC Solar."  [D.E. 21 at 16].  But, that raises an inference that appears nowhere in the complaint.  The complaint instead alleges that ISC joined with M&S in both 2017 and 2018 to further a fraud and then Plaintiffs pointed to a specific instance where acts took place to support that claim.  So, even if ISC could use a 12(b)(6) argument in support of its position for fraudulent joinder, the complaint is not as conclusory as ISC makes it out to be.

With that being said, there is a noticeable difference between the allegations presented against T-Mobile and ISC.  On one hand, the claims against T-Mobile are entirely separate from all of the other defendants and, on the other hand, ISC and M&S are linked with a specific set of factual allegations.  T-Mobile has therefore shown that Plaintiffs fraudulently joined M&S to defeat diversity jurisdiction and that the motion to remand should be **DENIED** as to this defendant.  *See M.W.*, 2015 WL 1311029, at *5 ("[T]he Court holds that the attempted joinder of non-diverse defendants on the basis of wholly disconnected claims is unreasonable, and constitutes a fraudulent misjoinder.  Accordingly, the motion to remand must be

denied as to Plaintiffs' claims against the [diverse defendants]."). By contrast, ISC has fallen short in this respect and this requires us to turn to the final argument that relies on federal bankruptcy jurisdiction.

### D.    *Federal Bankruptcy Jurisdiction*

ISC says that the Court should deny the motion to remand because this case constitutes a related civil proceeding to a collateral bankruptcy matter currently pending in the United States Bankruptcy Court for the District of Nevada. ISC relies primarily on 28 U.S.C. § 1334, where it provides that federal jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. ISC refers to this as "related-to" jurisdiction and says that this case should remain in federal court because DC Solar is the same debtor with a pending bankruptcy case in Nevada. If this case is remanded to Florida state court, ISC is concerned that it will delay the distribution of the bankruptcy estate and run the risk of inconsistent results or double liability as an investigation continues into DC Solar's contracts.

For a civil proceeding to be "related to" a bankruptcy case, there must be "some nexus between the related civil proceeding and the Title 11 case." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir. 1990). Generally, the question is whether "the potential outcome of the dispute . . . would 'conceivably have an effect' on the bankruptcy estate." *Wortley v. Bakst*, 844 F.3d 1313, 1320 (11th Cir. 2017) (quoting *Lemco Gypsum*, 910 F.2d at 788). The Eleventh Circuit has found that a case is "related to cases under Title 11" if "the outcome could alter the

debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (internal quotation omitted).   This is a broad jurisdictional grant that "encompasses cases that 'could conceivably have an effect on the estate being administered in bankruptcy' and includes any action 'which in any way impacts upon the handling and administration of the bankrupt estate.'"  *Id.*; *see also In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999) (describing "related to" jurisdiction as "extremely broad").   However, while the scope of federal bankruptcy jurisdiction is broad, it "cannot be limitless."  *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995).

ISC says that the Court should exercise federal bankruptcy jurisdiction because we have one set of creditors (i.e. Plaintiffs) suing a separate creditor (i.e. ISC) and, depending on the outcome of this case, it *could* impact the distribution of the bankruptcy estate for DC Solar.   The problem with this argument is that "to accept jurisdiction on the basis that the controversy is related, it must appear on the face of the complaint that it has an affect on the estate of the Debtor[.]"  *In re Southampton Dev. Corp.*, 191 B.R. 471, 473 (Bankr. M.D. Fla. 1995).   That means "if the only possible affect on the estate would be as a third-party claim it is insufficient to establish jurisdiction based on the nexus with the bankruptcy case."  *Id*.   Indeed, "[i]t is recognized that the jurisdiction based on the fact that the controversy is related must be viewed narrowly and disputes between third parties which do not implicate the Debtor's property is not related to a case under Title 11

and the Bankruptcy Court has no jurisdiction over such controversies." *Id.* (citing *In re Edwards, III, C.P.,* 100 B.R. 973 (E.D. Tenn. 1989)).

In light of these principles, it is entirely unclear as to how this case is "related to" the pending bankruptcy matter in Nevada when all we have here is one non-debtor seeking damages against other non-debtors.  This is a glaring shortfall in exercising "related-to" jurisdiction because nowhere in the complaint do Plaintiffs seek a recovery in connection with DC Solar's bankruptcy estate.  And courts have repeatedly held that "claims to recover non-estate property do not satisfy the 'related to' requirement." *In re Mouttet*, 2020 WL 5993925, at *22 (S.D. Fla. Oct. 9, 2020) (citing *AEL Fin., LLC v. Tessier*, 2007 WL 2427867, at *1 (S.D. Tex. Aug. 22, 2007) ("A third party action does not create "related to" jurisdiction when the asset in question is not a property of the estate.")).  So, even if Plaintiffs prevailed on every claim in their complaint, it is unclear whether anything would be taken from DC Solar's bankruptcy estate, undermining any application of exercising federal bankruptcy jurisdiction.  *See Joyner v. S.F.L. & S.I.L., LLC*, 485 B.R. 538, 560 (W.D. La. 2013) (remanding to state court because "[i]f [plaintiff] succeeds on the merits of his claims, and any of the transactions are rescinded, that property would then potentially be returned to its alleged rightful owner; it would never become part of [the debtor's] bankrupt estate").

ISC suggests that this is immaterial because so long as DC Solar "pervades the [c]omplaint," then bankruptcy jurisdiction exists.  [D.E. 21 at 19].  That is a feeble contention, in many respects, because that is not the test used in our circuit.

The test that we use – and the one that the Eleventh Circuit adopted – is a standard that originated in the Third Circuit:

> In *Pacor, Inc. v. Higgins* the Third Circuit enunciated a test for determining whether a civil proceeding is sufficiently related to bankruptcy to confer federal jurisdiction on the district court.  "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.  The proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  We join the majority of the circuits that have adopted the *Pacor* formulation.

*Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).  While this test does not necessarily require a proceeding against a debtor or a debtor's property to create "related-to" jurisdiction, "courts have regularly concluded that they lack jurisdiction to resolve claims by non-debtors against non-debtors."  *In re Am. Capital Corp.*, 425 B.R. 714, 723 (Bankr. S.D. Fla. 2010) (citation and quotation marks omitted).  And the reason for that consistency is because even if we "assume[] complete success, and/or full recovery," it "would not inure to the benefit of the estate or to its creditors."  *In re C.A.C. Jewelry, Inc.*, 124 B.R. 419, 422 (Bankr. D.R.I. 1991).

We see no reason to reach a different result here because, other than ISC showing that DC Solar is referred to repeatedly in the complaint, ISC has failed to explain how this case has any tangible effect on the bankruptcy estate.  Any recovery would, in other words, *not* be from the debtor's estate. *See In re Schwarz-*

*walder*, 242 B.R. 734, 739 (Bankr. M.D. Fla. 1999) ("Proceedings to resolve disputes between two non-debtors regarding property which is not property of the estate generally are not 'related to' a bankruptcy case within the meaning of § 1334 of title 28."). And any relief would also be for the sole benefit of the Plaintiffs, not DC Solar. *See In re Mouttet*, 2020 WL 5993925, at *22 (finding no related-to jurisdiction because "the only relief sought against Defendants is for the benefit of Plaintiffs, not the Estate."). Thus, given that federal bankruptcy jurisdiction does not apply, Plaintiffs' motion to remand should be **GRANTED** as to ISC with all claims against ISC and M&S **SEVERED** and **REMANDED** back to Florida state court.[6]

---

[6]     Plaintiffs seek fees as compensation for having to file a motion to remand. Although Plaintiffs never reference any legal authority, we assume that the request is pursuant to 28 U.S.C. § 1447(c). That statute says that a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id*. "Whether to award fees and costs under this section is within the Court's sole discretion." *Smith v. Health Ctr. of Lake City, Inc.*, 252 F. Supp. 2d 1336, 1346 (M.D. Fla. 2003) (citing *Martin v. Mentor Corp.,* 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001)). Plaintiffs' motion should be **DENIED** in this respect because the fee request is conclusory and fails to include any support for a finding that either ISC or T-Mobile lacked a reasonably objective basis for removal. *See, e.g.*, *Taylor v. R.J. Reynolds Tobacco Co.*, 2010 WL 11505280, at *1 (S.D. Fla. Jan. 8, 2010) ("[E]ven though a court ultimately rejects a defendant's removal, if the defendant had 'some basis in law' to remove the action, a court may decline to award fees and costs to the plaintiff.") (citing *Clegg v. Bristol-Myers Squibb Co.*, 285 B.R. 23 (M.D. Fla. 2002)).

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiffs' motion to remand [D.E. 7] be **GRANTED in part** and **DENIED in part**:

A.      Plaintiffs' motion to remand T-Mobile to Florida state court should be **DENIED**.

B.      Plaintiffs' motion to remand ISC should be **GRANTED** with all claims against ISC and M&S **SEVERED** and **REMANDED** back to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

C.      Plaintiffs' motion for fees should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 16th day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge