UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-25257-Civ-GAYLES/TORRES

SOLAR ECLIPSE INVESTMENT
FUND VII, LLC *et al.*,

    Plaintiffs

v.

T-MOBILE USA, INC.,
INTERNATIONAL SPEEDWAY
CORPORATION, MARSHALL &
STEVENS, INC.,

    Defendants.

_____/

REPORT AND RECOMMENDATION
ON T-MOBILE USA, INC.'S MOTION TO DISMISS

This matter is before the Court on T-Mobile USA, Inc.'s ("T-Mobile" or "Defendant") motion to dismiss Solar Eclipse Investment Funds' VII, VIII, XIV, XXVII, XXXII, and XXXV ("Plaintiffs") complaint. [D.E. 14]. Plaintiffs responded to T-Mobile's motion on February 3, 2021 [D.E. 23] to which T-Mobile replied on February 22, 2021. [D.E. 38]. Therefore, T-Mobile's motion to dismiss is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, T-Mobile's motion to dismiss should be **GRANTED without prejudice**.[1]

---

[1] On January 6, 2021, the Honorable Darrin P. Gayles referred all pretrial matters to the undersigned Magistrate Judge for disposition. [D.E. 6].

## *I. BACKGROUND*

Plaintiffs are a group of investment funds that poured hundreds of millions of dollars into an enterprise that purported to manufacture and deploy mobile solar generators ("MSGs"). Jeff and Paulette Carpoff (the "Carpoffs") and their company – DC Solar Distribution Inc. and its related entities ("DC Solar") – were the central figures that orchestrated a $2.5 billion dollar Ponzi scheme to provide a temporary source of electrical power to customers. DC Solar offered investment opportunities to third party investors to purchase and lease the MSGs in return for valuable tax and financial benefits.

Plaintiffs paid approximately 30% of the sale price for each MSG between 2011 and 2018 (worth approximately $45,000 each) as a down payment and issued a promissory note to DC Solar for the remaining amount. Plaintiffs leased the MSGs back to DC Solar and then DC Solar leased the MSGs to third parties, such as T-Mobile. T-Mobile used the MSGs as emergency power for cellular towers and International Speedway Corporation ("ISC") used them to power light stands at its racetracks. Plaintiffs were attracted to these investments, in part, because DC Solar had long-term lease agreements with these defendants. This allowed for an accurate valuation of the MSGs, provided Plaintiffs with revenue to pay off the promissory notes, and showed that DC Solar had reputable business partners.

However, many of the MSGs that DC Solar purported to manufacture never existed. The Carpoffs and several other co-conspirators used DC Solar as a vehicle to defraud Plaintiffs and other investors. And some co-conspirators have been

charged with, and pled guilty to, federal charges.[2] DC Solar is now part of bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Nevada.

T-Mobile is a publicly traded wireless network operator incorporated in Delaware with a principal place of business in Washington State. A T-Mobile employee, Alan Hansen ("Mr. Hansen"), began T-Mobile's relationship with the Carpoffs in 2012 when the company looked to save money on backup generators during power outages. T-Mobile started to rent MSGs from DC Solar in 2014 pursuant to short-term as-needed agreements. In September 2015, DC Solar presented T-Mobile with a lease contract that required the latter to lease 1,000 MSGs at a rent of $1,100 per month for ten years (the "T-Mobile Lease"). This contract, over its lifespan, required T-Mobile to pay more than $130 million over ten years. Mr. Hansen signed the lease on behalf of T-Mobile. Plaintiffs allege, that prior to the signing, T-Mobile knew it would not honor the agreement and would instead continue to only rent MSGs on a short-term as-needed basis. Plaintiffs claim that T-Mobile and DC Solar used the lease to induce them to invest in MSGs.

On December 17, 2020, Plaintiffs filed a state court complaint [D.E. 1-2] against defendants in the Eleventh Judicial Circuit in and for Miami-Dade County

---

[2] Mr. Hansen pled guilty to fraud and, according to his plea agreement, he executed a contract with DC Solar in September 2015 for T-Mobile to lease one thousand MSGs in exchange for a one-million-dollar payout. *See* Hansen Plea Agreement, at A-1, *U.S. v. Hansen*, No. 20-cr-00016 [ECF 3 No. 16] (E.D. Cal. July 28, 2020) (incorporated as [D.E. 14-1). The purpose of the contract was to induce funds to invest more money in DC Solar's illusory fleet of MSGs. *Id*.

3

Florida with three causes of action: (1) fraudulent misrepresentation/concealment, (2) aiding and abetting fraud, and (3) negligent misrepresentation. T-Mobile filed a notice of removal on December 27, 2020, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1447. [D.E. 1]. On January 7, 2021, Plaintiffs filed a motion to remand this action back to Florida state court. [D.E. 7]. One week later, ISC consented to T-Mobile's removal and asserted an additional basis for the Court to exercise federal jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 1452(a). [D.E. 11].

The Court granted Plaintiffs' motion to remand in part by severing the non-diverse defendants and remanding them to Florida state court. [D.E. 43]. However, the Court held that federal jurisdiction existed with respect to T-Mobile and now the company is the sole remaining defendant in this action. Plaintiffs claim that T-Mobile is liable because of the company's employment relationship with Mr. Hansen and T-Mobile seeks dismissal of these allegations for, among other things, a failure to state a claim. With the response and reply filed, the motion to dismiss is now ripe for disposition.

## II. APPLICABLE PRINCIPLES AND LAW

In ruling on a motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). The Court must also "limit[] its consideration to the pleadings and exhibits attached

4

thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) (internal quotation marks omitted). But "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual content gives a claim facial plausibility. *Id*. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). But facial plausibility, alone, may not be enough. A complaint states a claim capable of surviving a motion to dismiss if "that inference alone would . . . entitle [the claimant] to relief" under the legal theory supplied to bring the claim. *Id* at 682. In other words, a 12(b)(6) motion to dismiss "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).

5

In addition, where a cause of action sounds in fraud, a plaintiff must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002); *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *3 (S.D. Fla. June 5, 2012). Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if a plaintiff pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

### *III. ANALYSIS*

T-Mobile seeks to dismiss all three counts in Plaintiffs' complaint pursuant to Fed. R. Civ P. 8(a), 9(b), and 12(b)(6). T-Mobile asserts that the claims are substantively deficient and that, at minimum, they fail to satisfy basic pleading requirements. We first consider the question of whether the complaint constitutes a shotgun pleading because that issue might be dispositive with no need to consider alternative arguments for dismissal.

### A. *Whether the Complaint is a Shotgun Pleading*

A shotgun pleading is defined by a "failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). The Eleventh Circuit has found that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear. Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009).

Shotgun pleadings are also often characterized by factually unsupported claims and frequently fail to specify which defendant is responsible for each act alleged. *See Beckwith*, 146 F. App'x at 372 ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a shotgun pleading"). Shotgun pleadings make it virtually impossible to know which allegations of fact are intended to support which claims for relief. *See id.* As a result, shotgun pleadings impede the orderly, efficient, and economic disposition of disputes as well as a court's overall ability to administer justice. *See Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001), *abrogated on other grounds* by *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

The Eleventh Circuit has instructed district courts to turn away shotgun pleadings as fatally defective. *See B.L.E. ex rel. Jefferson v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009). To allow such a pleading would place an unjustifiable burden on a court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." *Beckwith*, 146 F. App'x at 373. Indeed, district courts are not required to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted." *Strategic Income Fund*, 305 F.3d at 1296 n.9.

Defendant says that Plaintiffs' complaint constitutes a shotgun pleading because each count "reallege[s] and incorporate[s] each and every paragraph stated above and below," and asserts multiple counts against all defendants. [D.E. 1-2]. Plaintiffs' response is that a pleading does not automatically become a shotgun pleading merely because it incorporates allegations from elsewhere in the complaint. Plaintiffs also claim that their complaint avoids this misstep because "each defendant has a dedicated description of their individual participation in a joint fraudulent scheme." [D.E. 23 at 20].

While it is true that the complaint here realleges and incorporates paragraphs in each successive count, this does not render the allegations incomprehensible. That is, unlike the classic shotgun pleading that the Eleventh Circuit often frowns upon, the complaint here identifies the specific facts that apply to each defendant. And even where Plaintiffs reference "Defendants" generically or "ISC, T-Mobile, and

8

M&S" collectively, there is no confusion as to what conduct is alleged against which defendant because Plaintiffs identify the relevant party in the surrounding paragraph(s). [D.E. 1-2 ¶59 (describing internal email (conduct) sent by managing director at ISC (defendant))]. So, while the complaint "realleges and incorporates" allegations, it is clear what conduct applies to which defendant.

Moreover, even where the allegations create instances where facts specific to one count are technically realleged in another, that alone is not an adequate basis to dismiss the complaint. "[The Eleventh Circuit has] recognized that '[p]leading facts not necessary to state a claim is not grounds for dismissal of a complaint'[.]" *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008) (quoting *Athens Newspapers v. Jefferson Standard Life Ins. Co.*, 729 F.2d 1412, 1417 (11th Cir. 1984)). And such extraneous facts can and should be overlooked. *Id.* (overlooking extraneous and repetitious statements in appellant's first amended complaint because it was minimally sufficient to satisfy pleading standards). Thus, to the extent Plaintiffs incorporate extraneous facts in their complaint, that is not an adequate reason to dismiss the complaint where, as here, there is only one remaining defendant in this case and those allegations should be overlooked in evaluating the sufficiency of a claim against T-Mobile. T-Mobile's motion to dismiss the complaint as a shotgun pleading should therefore be **DENIED**.

### B. *Fraudulent Misrepresentation/Concealment (Count One)*

Having resolved that preliminary issue, the next question is whether the complaint adequately states a claim for fraudulent misrepresentation and fraudulent

9

concealment. [D.E. 1-2 ¶¶ 108-18]. In Florida, fraudulent concealment claims are similar to fraudulent misrepresentation because both causes of action include elements of deception and an intent to deceive. *See Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1119 (M.D. Fla. 2009) ("In Florida, fraudulent concealment claims and fraudulent misrepresentation claims are identical, and, as such, both involve elements of knowing deception and an intent to deceive."). They differ, however, because Florida courts impose the additional requirement of a duty to disclose for fraudulent concealment. *See Dunkel v. Hedman*, 2016 WL 4870502, at \*14 (M.D. Fla. Aug. 17, 2016), *Report and Recommendation adopted*, 2016 WL 4765739 (M.D. Fla. Sept. 13, 2016) ("Hedman contends 'a claim for fraudulent concealment is the same as one for fraudulent misrepresentation,' but Florida courts impose the additional requirement of a duty to disclose for claims of fraudulent concealment") (citing *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010)).

To state a claim for fraudulent misrepresentation, a plaintiff must show: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 2021 WL 2946295, at \*6 (11th Cir. July 14, 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). A fraudulent concealment claim requires, on the other hand, that a plaintiff show: "(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be

disclosed; (3) the defendant knew her concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation." *Dunkel v. Hedman*, 2016 WL 4870502, at *13 (M.D. Fla. Aug. 17, 2016) (citing *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010)). A duty to disclose arises if "one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003).

Here, the complaint misses the mark because the Court could find not a case – nor is there one referenced in the response – where a plaintiff pled "fraudulent misrepresentation/concealment" in a single count. That is not surprising because, as stated earlier, the elements of each claim, while similar, are different. Fraudulent misrepresentation requires a plaintiff to identify a statement that was made whereas fraudulent concealment looks to whether a plaintiff can identify a statement that was *not* made contrary to a legal duty to do so. And in the limited instances where courts have suggested that these causes of action are identical, there is no acknowledgement that Florida law recognizes a claim for "fraudulent misrepresentation/concealment."

While commingling causes of action is not always fatal to the viability of a claim, count one is defective because Plaintiffs must also meet the heightened pleading requirements under Fed. R. Civ. 9(b). But, it is unclear how Plaintiffs have met that standard when they lumped together two different causes of action and did so in an ambiguous manner that runs contrary to Rule 9(b)'s mandate to plead fraud

11

with particularity. To the extent Plaintiffs wish to separate these causes of action, they must make that distinction clear in an amended complaint and come armed with specific facts tailored to each claim. However, as the complaint stands now, Plaintiffs have failed to satisfy even the most basic pleading requirements under Rule 8 because combining two distinct – albeit related – causes of action fails to notify T-Mobile or the Court of the claim presented. T-Mobile's motion to dismiss count one should therefore be **GRANTED without prejudice**.[3]

### C. *Aiding and Abetting Fraud (Count Two)*

Plaintiffs allege in count two that T-Mobile is liable for aiding and abetting fraud. [D.E. 1-2 ¶¶ 136-41]. In Florida, aiding and abetting fraud requires a showing of three elements: "(1) the existence of an underlying fraud; (2) that [t]he defendant had knowledge of the fraud; and (3) that [t]he defendant provided substantial assistance to advance the commission of the fraud." *Chang v. JPMorgan Chase*, 845 F.3d 1087, 1097-98 (11th Cir. 2017) (quoting *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371–72 (Fla. 5th DCA 2005)) (internal quotation marks omitted). The third element "occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Id*. at 1098 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)).

---

[3] Because we recommend the dismissal of count one for the reasons stated above, we offer no opinion on any alternative arguments with respect to the sufficiency of the facts pled in count one. Plaintiffs are advised, however, to remedy any potential shortfalls that may exist in their complaint and to omit any extraneous allegations that have nothing to do with T-Mobile.

12

Defendant seeks dismissal of count two because Plaintiffs fail to plead the second and third elements with the requisite particularity to satisfy Rule 9(b). [D.E. 14].

In looking at the second element – on whether T-Mobile had actual knowledge of the underlying fraud – Plaintiffs direct the Court's attention to Rule 9(b) and say that "knowledge[] and other conditions of the mind may be pled generally." [D.E. 23]. That is correct, in some respects, because Rule 9(b) allows a plaintiff to state a fraud theory of liability without particularizing "the specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). But, on the other hand, a plaintiff must do more than make a conclusory allegation "to support an aiding and abetting claim where the facts in the complaint only suggest[] that the defendant should have known that something was amiss." *Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012).

The problem here is that Plaintiffs never allege actual knowledge. Plaintiffs claim that the circumstances here raised a "red flag[,]" that "[T-Mobile] was on notice of a problem [like fraudulent collusion,]" and that "[h]ad T-Mobile properly supervised [Hansen], . . . it would have discovered the fraudulent T-Mobile Lease[.]" [D.E. 1-2 at ¶¶ 50-51, 110, 159]. However, these facts "only go so far as to suggest that [T-Mobile] should have known that something was amiss with [Mr. Hansen's] transactions[.]" *Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009). And facts merely suggesting that a defendant *should have known* that something was amiss is insufficient to meet the requirement of actual knowledge. *See id.* at 640

(holding that the district court properly dismissed plaintiff's aiding-and-abetting fraud claim where plaintiff failed to allege defendant-bank had actual knowledge of customer's fraudulent activity). Indeed, an aiding and abetting claim cannot substitute allegations that a defendant should have known of a fact had it exercised reasonable care when the cause of action requires actual knowledge. Plaintiffs suggest that a lower scienter requirement is appropriate given the allegations presented. Yet, Plaintiffs fail to rely on any authority to support that position and, based on the undersigned's review of relevant cases, no exception applies.

To the extent Plaintiffs seek to impute Mr. Hansen's knowledge to T-Mobile under an agency or vicarious liability theory, they may do so only insofar as Mr. Hansen's actions are not entirely adverse to T-Mobile. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998). Entire adversity requires allegations that the agent's actions were neither "intended to benefit the corporation nor actually cause short-or long-term benefit to the corporation." *Id.* at 736. In other words, "imputation is permitted when an agent's actions were 'designed to turn the corporation into an 'engine of theft' against outsiders,' as opposed to when an agent took actions that diminished the assets of the corporation itself." *Chang*, 845 F.3d at 1096 (quoting *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3rd DCA 1992)).

This theory of liability is insufficient because there are no plausible allegations as to how T-Mobile benefitted from Mr. Hansen's actions. There is no explanation, for instance, as to how T-Mobile earned any revenue through the lease agreements or whether it incorporated into its marketing strategy an expansion of green energy

14

resources. The only hypothetical that Plaintiffs proffer is that the sham lease for solar-powered generators benefitted T-Mobile and its reputation as a green energy provider. Yet, there are no allegations as to how T-Mobile stood to gain anything tangible from the sham lease that Mr. Hansen signed in 2015. *See* Hansen Plea Agreement [D.E. 14-1]. If anything, there is the possibility that T-Mobile stood to *lose* something had it advertised itself as a green energy vendor because it could not deliver the promised solar power that the lease purported to endow without access to new MSGs. That possibility suggests that the sham lease had the potential to hurt, rather than help, T-Mobile's business reputation.

In any event, given that Plaintiffs have failed to satisfy the actual knowledge requirement of their aiding and abetting fraud claim, there is no need to consider whether T-Mobile's conduct amounted to substantial assistance. *See Rosner*, 349 F. App'x at 640. It is worthwhile to note, however, that the complaint is short on details to support the inference that T-Mobile affirmatively assisted or otherwise enabled the fraud through its inaction where "[m]ere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty directly *to the plaintiff.*'" *Chang*, 845 F.3d at 1098 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)). But, Plaintiffs have not alleged any fiduciary relationship. If there are facts that can be alleged to show otherwise, Plaintiffs may, of course, include those in an amended complaint. Yet, for now, the factual allegations are insufficient to support an aiding and abetting fraud claim and, as a result, T-Mobile's motion to dismiss Count two should be **GRANTED without prejudice**.

### D. *Negligent Misrepresentation (Count Three)*

The final issue is whether to dismiss the negligent misrepresentation claim in count three. Negligent misrepresentation is akin to fraudulent misrepresentation except a plaintiff does not need to show that a defendant knew the misrepresentation was false. *In re Harris*, 2021 WL 2946295, at *7. Instead, claims arising under a theory of negligent misrepresentation must allege the following:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010), *certified question answered*, 110 So. 3d 399 (Fla. 2013). Negligent misrepresentation is a subset of fraud and, as such, requires a plaintiff to establish "the 'who, what, when, where, and how' of the fraud" to satisfy the heightened pleading standard of Rule 9(b). *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("Rule 9(b)'s heightened pleading standard requires that the complaint set forth . . . precisely what statements were made in what documents or oral representations."); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims. ") (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993) (negligent misrepresentation claim sounds in fraud under Florida law)).

16

T-Mobile says that Plaintiffs fail to state a claim for negligent misrepresentation because "(1) T-Mobile does not owe any legally cognizable duty to the Funds; (2) the Complaint does not allege that T-Mobile made any representations to the Funds; and (3) the Complaint fails to satisfy the heightened pleading standards of Rule 9(b)." [D.E. 14]. Plaintiffs challenge the first two arguments, yet they omit any response to the third and whether their allegations meet Rule 9(b)'s pleading requirements.

There are at least two reasons that count three should be dismissed. The first is due to Plaintiffs' failure to offer a rebuttal to Rule 9(b). When a party fails to respond to an argument raised in a motion, a court may deem that argument unopposed. *See Kramer v. Gwinnett Cty., Georgia*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."), *aff'd*, 116 F. App'x 253 (11th Cir. 2004) (table decision); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *see also Jones v. Bank of America, N.A.*, 564 F. App'x 432, 434 (11th Cir. April 25, 2014) (granting defendant's motion for summary judgment where plaintiff failed to respond to an argument raised in defendant's motion). That applies here because, while Plaintiffs oppose two of Defendant's arguments, they are silent on how count three satisfies the who, what, when, where, and how of the alleged fraud. And that alone is a sufficient reason to dismiss count three because there is no explanation as to how the allegations are pled with particularity.

17

The second reason count three falls short is because – even when reviewing the underlying factual allegations – they are too generic. And that might explain why Plaintiffs sidestepped the issue altogether in their response. Plaintiffs allege, for example, that T-Mobile made material misrepresentations or failed to disclose the following material facts[4]: (1) that the T-Mobile lease was fraudulent, (2) that T-Mobile did not agree to lease 1,000 MSGs in September 2015, and (3) that T-Mobile paid only $500,000 for leasing MSGs over its entire relationship with DC Solar. [D.E. 1-2 at ¶ 156]. Plaintiffs further add that T-Mobile permitted Mr. Hansen and other employees to make unspecified "false statements to . . . third parties, including the Funds." *Id.* at ¶ 159.

These generic allegations are inadequate because they do not describe the *content* of the negligent misrepresentations, nor do they include a time or place on when and where they took place. *See Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1372 (S.D. Fla. 2019) (finding negligent misrepresentation claims properly alleged where complaint provided "(1) the exact statements that are alleged to be misleading or false; (2) the source of the allegedly misleading materials; and (3) where and when the allegedly misleading or false statements were made"). All that the Court can discern is that Mr. Hansen is one of the primary actors responsible for making material misrepresentations and that these acts should be imputed to T-

---

[4] Count three is difficult to comprehend because Plaintiffs never make clear whether individuals made affirmative misrepresentations or whether there was merely a failure to disclose. That makes the application of Rule 9(b) more difficult to apply because the nature of the misrepresentation is unclear.

Mobile. Yet, even after gathering pieces of these allegations, the content of these statements are unclear including how the statements misled Plaintiffs and what T-Mobile "gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

The missteps do not end there because – while Plaintiffs place most of the blame for the negligent misrepresentations on Mr. Hansen – they suggest that other unnamed individuals are equally to blame. [D.E. 1-2 at ¶ 156 ("T-Mobile failed to exercise reasonable care of competence in obtaining or communicating the information. T-Mobile negligently supervised its officers and employees, including Alan Hansen, permitting false statements to be made to third parties, including the Funds.")]. Plaintiffs fail, however, to identify any of these individuals, the content of their statements, the times and places they were made, how they were misleading, and what T-Mobile obtained as a result. Indeed, all that count three offers are the three generic categories that are at issue and one of the primary actors responsible for the misrepresentations. Because Rule 9(b) demands much more and the allegations are lacking in particularity, T-Mobile's motion to dismiss count three should be **GRANTED without prejudice**.

## *IV. CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that T-Mobile's motion to dismiss [D.E. 14] be **GRANTED without prejudice**. Any amended complaint should be filed within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 16th day of August, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge